## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

THOMAS M. UTTERBACK,

      Plaintiff,

v.                                                              Case No. 5:23-cv-279-TKW/MJF

CRAIG B. MORRIS,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff alleges that Defendant committed the tort of "defamation by implication" when he made statements about Plaintiff's felony conviction for money laundering and Plaintiff's history of civil litigation. Defendant moves to dismiss for failure to state a claim upon which relief can be granted. Because Plaintiff fails to allege any defamatory implication and because Defendant's statements are substantially true or constitute mere opinion, Plaintiff has failed to state a claim upon which relief can be granted. The District Court, therefore, should dismiss this civil action.

# I. BACKGROUND

## A.    The Parties

In 1998, Plaintiff Thomas M. Utterback—who then was an attorney practicing law in Missouri—pleaded guilty to money laundering. Doc. 15 at 6; *see United States v. Utterback*, 4:98-cr-26-CDP (E.D. Mo. Aug. 7, 1998). Not surprisingly, the Missouri Supreme Court promptly disbarred Plaintiff after his conviction.

Subsequently, from 2003 to 2015, Plaintiff worked as a real estate agent in the Florida Panhandle. Doc. 15 at 4. During that same period, Plaintiff was a manager of a limited liability company called "A&J Holdings, LLC," which owned forty percent of an entity called "the Calypso Developer Entities," which in turn "owned certain property rights" in another entity called the "Calypso Towers Resort Community Association, Inc." ("Calypso Towers Association"). *Id.* at 1, 5.

Defendant Craig B. Morris is an attorney. *Id.* at 1. The Calypso Towers Association is a client of Defendant. *Id.* at 1–2.

## B.    The Calypso Towers Litigation

On May 25, 2017, in the Circuit Court in and for Escambia County, Florida, the Calypso Towers Association, represented by Defendant,

initiated a lawsuit against ten defendants, including Plaintiff and A&J

Holdings, LLC. Complaint at 1, *Calypso Towers Resort Cmty. Ass'n, v.*

*The Calypso Grp., LLC*, No. 2017 CA 000784 (Fla. Cir. Ct. May 25, 2017)

(Attachment 1 to this R&R). Relevant here, the complaint alleged that

certain defendants—including Plaintiff—induced other defendants to

breach an option contract between themselves and the Calypso Towers

Association.[1] *Id.* at 8–10.

On January 11, 2018, the Calypso Towers Association voluntarily

dismissed its case against Plaintiff. *See* Notice of Dismissal of Defendants

Thomas Utterback, William Smith, and Mimosa Capital Partners, LLC

at 1, *Calypso Towers Resort Cmty. Ass'n, v. The Calypso Grp., LLC*

*("Calypso Towers Litigation")*, No. 2017 CA 1165 (Fla. Cir. Ct. 2023)

(Attachment 3 to this R&R), *appeal docketed*, No. 1D2023-1450 (Dist. Ct.

App. May 12, 2023). However, A&J Holdings, LLC—the company of

---

[1] On September 15, 2017, the litigation was transferred to the Circuit
Court in and for the Fourteenth Judicial Circuit of the State of Florida,
Bay County. *Calypso Towers Resort Cmty. Ass'n, v. The Calypso Grp.,*
*LLC*, No. 2017 CA 000784, slip. op. at 1 (Fla. Cir. Ct. Sept. 15, 2017)
(Attachment 2 to this R&R). Plaintiff urged this court to take judicial
notice of this lawsuit. Doc. 17 at 6. Federal courts may take judicial notice
of documents filed in state courts. *Bryant v. Avado Brands, Inc.*, 187 F.3d
1271, 1276 (11th Cir. 1999).

which Plaintiff was a manager—remained a party to the lawsuit. *Id.*; *see* Doc. 15 at 5.

On February 15, 2023, Plaintiff testified during the trial. *See* Excerpt Testimony of Mr. Utterback taken the 15th day of February, 2023, 5:23–6:1, *Calypso Towers Litigation*, No. 2017 CA 1165 (Fla. Cir. Ct. 2023), *appeal docketed*, No. 1D2023-1166 (Dist. Ct. App. May 12, 2023) (Attachment 4 to this R&R). Among other things, Plaintiff testified about his personal history, including his previous career as a licensed attorney, his money laundering conviction, and his subsequent disbarment. *Id.*

## C.  Plaintiff's Malicious Prosecution Lawsuit

On July 2, 2020, Plaintiff sued Calypso Towers Association and Defendant. Complaint at 1, *Utterback v. Calypso Towers Resort Cmty. Ass'n*, No. 20001249CA (Fla. Cir. Ct. 2023), *appeal docketed*, No. 1D2023-1166 (Attachment 5 to this R&R). Plaintiff contended that Defendant conspired to and did maliciously prosecute Plaintiff by suing him in the *Calypso Towers Litigation* case. *Id.* at 5–6.

On April 24, 2023, the Bay County Circuit Court granted Defendant's motion for summary judgment and closed the case.

*Utterback*, No. 20001249CA slip op. at 1 (Fla. Cir. Ct. dismissed April 24, 2023) (Attachment 6 to this R&R). Plaintiff appealed. That appeal remains pending. *See* Doc. 17 at 7.

## D.   <u>Defendant's Alleged Defamation by Implication</u>

On November 11, 2021, Defendant made a presentation to the board members and condominium owners of the Edgewater Beach Resort Community Association ("Edgewater Beach Association"). Doc. 15 at 2. The purpose of the meeting was to "introduce himself" and answer questions regarding "his representation" of the Edgewater Beach Association. *Id.* In response to a question about "Utterback's lawsuit against Morris," Plaintiff alleges that Defendant stated:

> Why would I tell you the name of the person who sued me?
> Why would I tell you the name of the person who sued me?
> Cause I want you to Google him. I want you to Google him.
> The first thing that will come up is a mug shot. This is a well-
> known disbarred attorney who can't get his license back
> because the State of Missouri says he is not . . . to tell the
> truth and he is a convicted felon. He took money. Millions of
> dollars. Put them in a suitcase. Allegedly with some drug
> connection. Took the money. Millions of dollars in a suitcase.
> Tried to take through an airport down in another country. Got
> arrested. Got put in jail for a while and lost his bar license.
> The only way he can practice law is to sue people. He can only
> represent himself. So, if you deal with him in any way, shape
> or form, he is going to sue you and he is going to get to practice
> law again. He has sued Hand Arendall, one of the best law
> firms in Alabama and Florida, he sued myself, he sued my

association, he sued Trustmark Bank – have you ever heard of Trustmark Bank? Okay. He is suing someone right now probably. That is the one lawsuit against prior to this lawsuit. That lawsuit will be thrown out of court that I was telling you about with Utterback and this lawsuit right here we've already discussed in enough detail. So please do not repeat things that are not true.

*Id.* at 3.

### E.   **This Civil Action**

On October 23, 2023, Plaintiff, proceeding *pro se*, filed this civil action against Defendant. Doc. 1. Plaintiff contends that on November 11, 2021, through the statements set forth above, Defendant defamed Plaintiff by implication. *Id.* at 3, 6. On December 12, 2023, Plaintiff filed his first amended complaint. Doc. 15.

Plaintiff alleges that Defendant's statements created the following false and defamatory implications:

- Plaintiff "was involved in the illegal drug trade."

- Plaintiff "stole money."

- Plaintiff's "plea of guilty to a money laundering charge in 1998 negatively affected [Plaintiff]'s work and involvement in the Calypso Resort or his career in Florida from 2003 to the present."

- Plaintiff is "maliciously litigious . . . without ethics or honor and poised to harm well-intentioned persons."

*Id.* at 6.

As noted above, Defendant has moved to dismiss this civil action for failure to state a claim upon which relief can be granted. Doc. 16.

## F.   **The Telephonic Hearing**

On June 18, 2024, the undersigned conducted a telephonic hearing regarding Defendant's motion to dismiss. Doc. 16. During the hearing—which was recorded—Plaintiff conceded:

- except for two relevant clauses, Defendant's statements on November 11, 2021 literally were true; and

- Plaintiff did not understand Defendant's statements, "He took money. . . . Took the money," to imply that Plaintiff stole the money that Plaintiff laundered.

## II. DISCUSSION

## A.   **Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes defendants to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a claim to survive dismissal, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.*

## B. <u>Defamation by Implication Under Florida law</u>

The parties agree that Florida law governs this case. Under Florida law, a private figure is entitled to recover if a defendant negligently makes statements with false and defamatory implications which injure the plaintiff. *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). The elements of a claim of "defamation by implication" are:

(1)   the defendant published literally true statements,

(2)   the statements:

    a. are juxtaposed in such a way as to imply a false and defamatory connection between them, or

    b. omit facts in such a way as to create a false and defamatory implication, or "gist," and

(3)   the false and defamatory connection, implication, or "gist," is about the plaintiff,

(4)   the plaintiff was damaged thereby, and

(5)   the defendant acted with the requisite culpability—in this case, negligence.

*Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106, 1107–08 (Fla. 2008); *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022). In such cases, the defendant may be liable unless the alleged defamation qualifies as an opinion. *Jews For Jesus, Inc.*, 997 So. 2d at 1108.

Florida law entrusts courts with determining whether the defendant's published words are reasonably susceptible to the implication alleged by the plaintiff. *Turner v. Wells ("Turner II")*, 879 F.3d 1254, 1269 (11th Cir. 2018); *see Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 590 (Fla. Dist. Ct. App. 1983). That is, under Florida law, it falls to courts in the first instance to determine whether the reasonable implications derived from a defendant's statements are as the plaintiff alleges. *See Readon v. WPLG, LLC*, 317 So. 3d 1229, 1237 (Fla. Dist. Ct. App. 2021); *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1319–20 (S.D. Fla. 2020). In determining the implication of statements, the entire publication must be examined. *Turner v. Wells ("Turner I")*, 198 F. Supp. 3d 1355, 1367 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018).

Once a court determines the reasonable implications of a defendant's statements, the court then must determine whether such

implications are defamatory. *Smith v. Cuban Am. Na't Found.*, 731 So. 2d 702, 704 (Fla. Dist. Ct. App. 1999); *Johnston*, 36 F.4th at 1275. An implication is defamatory if it "tends to injure the plaintiff's 'business or reputation, or occupation[]'" in the view of at least a "substantial and respectable minority" of the community. *Jews For Jesus, Inc.*, 997 So. 2d at 1115 & n.16. The relevant "community" is a plaintiff's "personal, social, official, or business relations." *Id.* at 1115 (quoting *Land v. Tampa Times Publ'g Co.*, 67 So. 130, 130 (Fla. 1914)).

If "a statement is not capable of a defamatory meaning, it should not be submitted to a jury." *Smith*, 731 So. 2d at 704; *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. Dist. Ct. App. 1973). Thus, whether "the defendant's statements constitute defamation by implication is a question [of] law for the court to determine." *Turner II*, 879 F.3d at 1269. Similarly, whether a statement constitutes merely the speaker's opinion is a question of law to be decided by the court. *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 715 (11th Cir. 1985).

1.    ***Defendant's Statements Did Not Reasonably Imply that Plaintiff's Plea of Guilty to Money Laundering Negatively Affected Plaintiff's Work From 2003 to The Present***

Plaintiff first alleges that Defendant's statements implied that Plaintiff's "plea of guilty to a money laundering charge in 1998 negatively affected [Plaintiff]'s work and involvement in the Calypso Resort or his career in Florida from 2003 to the present." Doc. 15 at 6.

***Defendant's Actual Words:*** Defendant stated:

> This is a well-known disbarred attorney who can't get his license back because the State of Missouri says he is not . . . to tell the truth and he is a convicted felon. *He took money. Millions of dollars. Put them in a suitcase. Allegedly with some drug connection. Took the money. Millions of dollars in a suitcase. Tried to take through an airport down in another country.* Got arrested. Got put in jail for a while and lost his bar license.

*Id.* at 3 (emphasis added).

***The Tense of The Statements:*** Although the tense of the words employed by Defendant is not dispositive, it is highly relevant. Defendant used the past tense when he mentioned Plaintiff's money laundering: "took," "put" "took," "tried," "got arrested," "got put in jail." *Id.* In this context, a reasonable person would understand Defendant's use of the past tense to indicate that these events took place in the past, not that

they were recurring events or a pattern of conduct. Given the absence of any indicia of continuing criminal conduct in Defendant's statements, a reasonable person would not perceive Defendant's statements to be implying that Plaintiff's money laundering continued after he was arrested.[2] *See Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60 (2d Cir. 1980) (the words must be "taken as they are commonly understood"); *Siercke v. Siercke*, 476 P.3d 376, 385–86 (Idaho 2020) ("the words used are to be given their common and usually accepted meaning and are to be read and interpreted as they would be read and understood by the persons to whom they are published") (quoting *Gough v. Tribune-Journal Co.*, 275 P.2d 663, 666 (Idaho 1954)).[3]

---

[2] If Defendant had falsely accused Plaintiff of committing a crime, Plaintiff would have a claim for defamation *per se. See, e.g., Myers v. Jim Russo Prison Ministries, Inc.*, 3 So. 3d 411, 412 (Fla. Dist. Ct. App. 2009); *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 299 (2d Cir. 1986); Restatement (Second) of Torts § 581A (1977) cmt. c. It is telling that Plaintiff has not asserted such a claim.

[3] Throughout this R&R, the undersigned has cited decisions of courts that have applied the law of States other than Florida. The holdings of these cases obviously do not bind Florida courts, but their analysis is persuasive insofar as law of the respective States regarding defamation by implication is substantially similar to Florida law.

***The Context of the Statements:*** As stated above, in determining the implication of statements, the relevant statement must be examined in its context. *Smith*, 731 So. 2d at 705; *Turner I*, 198 F. Supp. 3d at 1367; *see Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113–14 (2d Cir. 2005) (noting that "courts must give the disputed language a fair reading in the context of the publication as a whole" and should not be "read in isolation").

Defendant published his statements about Plaintiff's conviction in the context of questions from members of the Edgewater Beach Association—Defendant's client—about ongoing litigation involving Defendant. Doc. 15 at 2; *see* Doc. 17 at 7. Plaintiff concedes that, in this context, Defendant was compelled to "defend[] himself" in response to the question. Doc. 15 at 3. Only after Defendant described Plaintiff as "a well-known disbarred attorney" did Defendant mention Plaintiff's money laundering, which was the reason for Plaintiff's disbarment and logically relevant to explain the reason for Plaintiff's disbarment. *Id.* No reasonable person would perceive Defendant's statements as implying that Plaintiff continued to engage in money laundering after his arrest.

Accordingly, Plaintiff has failed to state a claim of implied defamation regarding Defendant's discussion of Plaintiff's conviction for money laundering.

### 2. *Defendant's Statements Did Not Reasonably Imply that Plaintiff Personally Was Involved in the Drug Trade*

Plaintiff also alleges that Defendant's statements imply that Plaintiff "was involved in the illegal drug trade . . . ." Doc. 15 at 6.

***Defendant's Actual Words:*** As noted above, Defendant stated:

> He took money. Millions of dollars. Put them in a suitcase. *Allegedly with some drug connection.* Took the money. Millions of dollars in a suitcase. Tried to take through an airport down in another country. Got arrested. Got put in jail for a while and lost his bar license.

*Id.* at 3 (emphasis added).

***The Tense of the Statement:*** Again, Defendant employed the past tense when he used verbs. Although not dispositive, it is relevant to a determination of the reasonable implication of Defendant's words. *See Krepps v. Reiner*, 588 F. Supp. 2d 471, 483–84 (S.D.N.Y. 2008) (applying New York law and recognizing that dismissal of a claim for defamation by implication is appropriate where "a plaintiff fails to identify any misleading omissions or factual suggestions" and the court cannot

reasonably interpret the language otherwise), *aff'd*, 377 F. App'x. 65 (2d Cir. 2010).

Defendant's use of the past tense implies that he was discussing conduct that occurred in the past, not the present or future.

***The Context of the Statement:*** Defendant made this statement in the context of explaining why the Supreme Court of Missouri disbarred Plaintiff. *See, e.g.*, *Smith*, 731 So. 2d at 705. This context further indicates that a reasonable person would not perceive the implication of Defendant's statements to be that Plaintiff was involved in the drug trade beyond his money laundering of drug proceeds.

***Defendant Qualified His Statement with the Word "Allegedly":*** In assessing the implication of a statement, courts must take into consideration all the words published by a defendant, including "giving weight to cautionary terms used by the person publishing the statement . . . ." *Norris v. Bangor Publ'g Co.*, 53 F. Supp. 2d 495, 506 (D. Me. 1999); *see Brown*, 440 So. 2d at 589. Here, Defendant indicated that the money laundered by Plaintiff "allegedly" had some drug connection. This is an important qualification. It indicates to a reasonable person that Defendant is unsure about this fact, and that anyone should take

Defendant's statements with the understanding that they may not be accurate. Although mere use of the word "allegedly" will not immunize an otherwise defamatory statement, it is relevant to understanding the message that a reasonable person would perceive from Defendant's words and their implications.

*The Phrase "Allegedly with some drug connection" Modifies the Laundered Money, not Plaintiff:* The clear implication of Defendant's statement is that the money Plaintiff laundered "allegedly" had some connection with drugs. A reasonable person would not understand this to imply that Plaintiff personally was connected to drugs, except to the extent he laundered money that was connected to drugs. To the extent that a reasonable person would understand Defendant's statement to imply that the money Plaintiff laundered had "some drug connection," that implication is true, and thus not defamatory.

*The Gist of Defendant's Statements Regarding Plaintiff's Money Laundering—Including That the Laundered Money Allegedly Was Connected to Drugs—is True:* If the implication of a statement is true, a plaintiff cannot state a claim for defamation by

implication as to that statement. *See Jews For Jesus, Inc.*, 997 So. 2d at 1106. Furthermore, under Florida law, a statement or implication "does not have to be perfectly accurate" to bar a claim of defamation by implication; only the 'gist' or the 'sting'" of the implication must be true. *Smith*, 731 So. 2d at 706–07; *Readon*, 317 So. 3d at 1235. Taken in context, an impliedly defamatory statement "is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Nix v. ESPN, Inc.*, 772 F. App'x 807, 814 (11th Cir. 2019) (per curiam) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991)).

Here, as Plaintiff admitted in his amended complaint and during the telephonic hearing, *he committed the crime of money laundering and was convicted*, just as Defendant intimated. Doc. 15 at 6; *see* Doc. 17 at 4; *see also* Excerpt Testimony of Mr. Utterback (Attachment 4 to this R&R), *supra*, at 5:23–25. Specifically, Plaintiff admitted the following:

- Plaintiff is a convicted felon.

- Plaintiff's client instructed Plaintiff "*to take* [the client's] money."

- Plaintiff took the money (in the sense that he handled, carried, and transported the money).

- The money that Plaintiff took amounted to over $3 million.

- Plaintiff took the money from the United States to Panama and then to Switzerland. From Panama to Switzerland, Plaintiff transported the money in suitcases.

- Plaintiff transported the money for a client, whom Plaintiff believed was involved in the illegal drug trade.[4]

- Plaintiff was aware of a high probability and believed that the money he transported constituted proceeds from drug trafficking and he deliberately avoided learning the truth about the origin of the funds.

- Plaintiff attempted to take the currency through an airport in Geneva, Switzerland.

- Plaintiff was arrested in Switzerland.

- Plaintiff was put in jail in Switzerland.

- Because of his felony conviction, the Supreme Court of Missouri disbarred Plaintiff from the practice of law.

- Plaintiff has been unable to persuade the Supreme Court of Missouri to reinstate Plaintiff's license.

These admitted and undisputed facts mirror the "gist" of the alleged implications of Defendant's statements. Therefore, any implications arising from Defendant's description of Plaintiff's conduct have the same

---

[4] Plaintiff's federal indictment also alleges that the money Plaintiff transported was derived from "the distribution of controlled substances." Attachment 7 to this R&R. Plaintiff conceded this during the telephonic hearing.

"gist" or "sting" as the truth: that Plaintiff committed money laundering and was convicted of this crime, and this resulted in the Missouri Supreme Court barring Plaintiff from practicing law. Any implication arising from Defendant's description of the money Plaintiff laundered also has the same "gist" or "sting" as the truth: that the money was alleged (in the indictment) to be connected to drugs.

Accordingly, Plaintiff has failed to state a claim of implied defamation regarding Defendant's statements that Plaintiff laundered money "allegedly with some drug connections."

### 3.   *Defendant's Statements Did Not Reasonably Imply that Plaintiff Stole The Money He Laundered*

Plaintiff also contends that Defendant's remarks implied that Plaintiff "stole money." Doc. 15 at 6.

***The Defendant's Actual Words:*** As before, Plaintiff relies primarily on the following statements by Defendant:

> This is a well-known disbarred attorney who can't get his license back because the State of Missouri says he is not . . . to tell the truth and he is a convicted felon. *He took money.* Millions of dollars. Put them in a suitcase. Allegedly with some drug connection. *Took the money.* Millions of dollars in a suitcase. Tried to take through an airport down in another country.

*Id.* at 3 (emphasis added).

***Plaintiff Conceded that Defendant's Words Did Not Imply That Plaintiff Stole The Laundered Money:*** During the telephonic hearing, the undersigned inquired about a reasonable person's understanding of Defendant's use of the word "took." Plaintiff conceded that Plaintiff himself did not understand Defendant's use of the word "took" to mean that Plaintiff stole the laundered funds. As Plaintiff stated at the telephonic hearing: "I don't think he meant that. I think he just meant I took the money and put it in a suitcase." Furthermore, Plaintiff essentially conceded that Defendant's words could not reasonably be understood as a statement that Plaintiff stole the money he laundered.

Regardless of Plaintiff's concession, it is obvious that a reasonable person would not perceive Defendant's statements to imply that Plaintiff had stolen the money he laundered. Rather, the clear implication of the word "took" in this context is that Plaintiff *carried, transported, and laundered the money*, not that he purloined the funds.

Furthermore, even if Defendant's statements can be said to suffer from minor inaccuracies, "[a]n incorrect identification of a person's crime in a published report is not, by itself, a triable issue of fact for a jury, particularly when the reported crime, although technically inaccurate, is

an accurate reflection of the underlying incident." *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939, 942 (Ariz. 1991) (applying Arizona law and collecting cases on this point). Florida law does not impose a duty to present "a balanced view," only a truthful one. *Turner I*, 198 F. Supp. 3d at 1371 (quoting *Perk v. Reader's Digest Ass'n*, 931 F.2d 408, 412 (6th Cir.1991)); *see Turner II*, 879 F.3d at 1270. Thus, even if some person were to conclude from Defendant's statement that Plaintiff stole the money he laundered, Defendant perpetuated only a minor inaccuracy regarding Plaintiff's criminal history. A substantially true statement is not impliedly defamatory simply because it does not include a plaintiff's preferred facts and distinctions. *Nix*, 772 F. App'x at 814; *Readon*, 317 So. 3d at 1235; *Jews For Jesus, Inc.*, 997 So. 2d at 1108; *Turner II*, 879 F.3d at 1271. Here, Defendant's statements regarding Plaintiff's criminal conduct were substantially true, and thus not impliedly defamatory.

For this reason, to the extent Plaintiff alleges that Defendant implicitly accused him of stealing the money that he laundered, the facts alleged by Plaintiff in his first amended complaint fail to state a claim of defamation by implication.

### 4. *The Gist of the Implications of Defendant's Statements About Plaintiff's Litigation Activities Was Truthful*

Plaintiff also alleges that Defendant's statements implied that he is litigious. Doc. 15 at 6.

***Defendant's Actual Words:*** Defendant stated in relevant part:

> The only way he [Plaintiff] can practice law is to sue people. He can only represent himself. So, if you deal with him in any way, shape or form, he is going to sue you and he is going to get to practice law again. He has sued Hand Arendall, one of the best law firms in Alabama and Florida, he sued myself, he sued my association, he sued Trustmark Bank – have you ever heard of Trustmark Bank? Okay. He is suing someone right now probably. That is the one lawsuit against prior to this lawsuit. That lawsuit will be thrown out of court that I was telling you about with Utterback and this lawsuit right here we've already discussed in enough detail.

*Id.* at 6.

***Plaintiff Conceded that The Implications of Most of the Defendant's Statements Regarding Plaintiff's Litigation Activities Are True:*** During the telephonic hearing, Plaintiff conceded that the implications of most of Defendant's statements regarding his litigation activities are true. Plaintiff contends that only two of Defendant's statements relevant to Plaintiff's claim were literally and impliedly untrue:

- "So, if you deal with him [Plaintiff] in any way, shape, or form, he is going to sue you and he is going to get to practice law again."[5]

- "He [Plaintiff] is suing someone right now probably."

*Id.* at 3.

As noted above, when an allegedly defamatory implication is true, a plaintiff cannot state a claim for defamation by implication. *Jews For Jesus, Inc.*, 997 So. 2d at 1106. Furthermore, a statement or implication "does not have to be perfectly accurate" so long as the "gist" of the implication is true. *Smith*, 731 So. 2d at 706–07; *Readon*, 317 So. 3d at 1235. Here, the gist of the implication of Defendant's statement about Plaintiff's litigation activity is true. For this reason alone, with respect to this portion of Defendant's statements, Plaintiff has failed to state a claim upon which relief can be granted.

**5.    *The Implications of Defendant's Statements About Plaintiff's Litigation Activity Constitute Pure Opinion, and Thus Are Not Actionable***

For a second independent reason Plaintiff fails to state a claim upon which relief can be granted regarding Defendant's statements about Plaintiff's litigation history: Defendant's statements were pure opinion.

---

[5] Plaintiff conceded during the telephonic hearing that Defendant's words did not convey a technical or legal definition of the term "practice law."

Under Florida law, a plaintiff fails to state a claim of defamation by implication if a defendant's statements were pure opinion. *Jews For Jesus, Inc.*, 997 So. 2d at 1108; *Turner I*, 198 F. Supp. 3d at 1371–72; *Nix*, 772 F. App'x at 814; *Bongino*, 477 F. Supp. 3d at 1320. A speaker "cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977). "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Turner II*, 879 F.3d at 1262 (quoting *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981)).

To determine whether statements are pure opinion, Florida courts have adopted the analytic framework created by the Ninth Circuit in *Information Control Corporation v. Genesis One Computer Corporation*, 611 F.2d 781, 783–84 (9th Cir. 1980). *See Keller*, 778 F.2d at 715; *From*, 400 So. 2d at 57. Under this framework, courts consider:

- whether a reasonable person would consider the statements, evaluated in their context, to be defamatory.

- whether the statements were made in a context where the "'audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole.'"

- whether in their context the statements are "likely to be understood as a statement of opinion rather than as a statement of fact."

*Info. Control Corp.*, 611 F.2d at 783–84 (quoting *Gregory v. McDonnell Douglas Corp.*, 552 P.2d 425, 428 (Cal. 1976)). Courts also must consider "whether the speaker accurately presented the underlying facts of the situation . . . ." *Zambrano v. Devanesan*, 484 So. 2d 603, 606 (Fla. Dist. Ct. App. 1986). However, when a defendant's statements could not reasonably be interpreted as stating "actual facts" about a plaintiff, such statements are rhetorical hyperbole and are nonactionable in light of the First Amendment's protection of speech. *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 57 (1988); *see Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." (alteration in original) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).

At best, reasonable persons could understand Defendant's words to imply that Plaintiff is litigious and that this is merely Defendant's opinion. Consider, for example, Defendant's statement: "So, if you deal with him [Plaintiff] in any way, shape or form, he is going to sue you and he is going to get to practice law again." The clause "deal[ing] with [Plaintiff] in any way, shape or form" is indefinite and is not susceptible to objective verification. *Keller*, 778 F.2d 711, 718 n.15 (citing *Ollman v. Evans*, 750 F.2d 970, 980 (D.C. Cir. 1984) (noting that "statements that are 'loosely definable' or 'variously interpretable' cannot in most contexts support an action for defamation")).

This statement also is a prediction of future events. "A prediction, or statement about the future, is essentially an expression of opinion." *Presidio Enterprises, Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 680 (5th Cir. 1986). Furthermore, as other courts have recognized, implying that another person is "litigious" constitutes a mere opinion. *See, e.g.*, *Shea v. Angulo*, No. 93-CIV-4183 (AGS), 1994 WL 86374, at *3 (S.D.N.Y. Mar. 16, 1994) (holding, under New York law, that a description of the plaintiff's litigation as "nuisance suits" in context of defamation *per se* was nonactionable); *Lukashok v. Concerned Residents*

*of N. Salem*, 554 N.Y.S.2d 39, 39 (N.Y. App. Div. 1990) (holding that accusing another of "malicious" use of the legal system were nonactionable opinion). Thus, a reasonable person would understand the implication of Defendant's statements to be merely Defendant's rhetorical opinion. *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006); *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 356 (Fla. Dist. Ct. App. 2020).

Additionally, at the same time Defendant stated his opinions, he related the truths upon which his opinions were based. That is, when Defendant stated his opinion—"if you deal with him [Plaintiff] in any way, shape, or form, he is going to sue you"—Defendant also stated that he had dealt with Plaintiff in the past. Doc. 15 at 3. Defendant stated that he had "filed a lawsuit" against Plaintiff on behalf of a client. Plaintiff conceded the truth of that statement:

- Plaintiff conceded that he "has a business relationship" with the Calypso Towers Association, whom Defendant represented. Doc. 15 at 1–2.

- Plaintiff conceded that Calypso Towers Association, while represented by Defendant, sued Plaintiff. *Id.* at 2–5; *see also, e.g.*, Complaint at 1, *Calypso Towers Litigation*, No. 2017 CA 1165 (Fla. Cir. Ct. 2023), *appeal docketed*, No. 1D2023-1450 (Dist. Ct. App. May 12, 2023).

- Plaintiff conceded that he also sued Defendant. Doc. 15 at 2–3.

Thus, the implications of Defendant's statements not only are Defendant's nonactionable opinions, they also are truthful, and thus nonactionable for that reason too.

The same is true with respect to Defendant's statement that Plaintiff "is suing someone right now probably." After stating this opinion, Defendant took the trouble to recite the list of persons and entities Plaintiff had sued. Doc. 15 at 3. Namely, Defendant stated that in his *pro se* capacity, Plaintiff sued:

- Hand Arendall;

- Defendant;

- Defendant's "association"; and

- Trustmark Bank.

*Id.* at 3. Plaintiff concedes that Defendant accurately listed the parties sued by Plaintiff in his *pro se* capacity. *Id.* at 3–4, 6–7. Therefore, Defendant's opinions regarding Plaintiff's litigation activities were not false and did not create any false implications.

***The Context of Defendant's Statements:*** As noted several times above, context is key. *American Mfgrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.

40, 58 (1999) ("language must not be torn from the context out of which it arose "). It is important, therefore, to keep in mind that Defendant was *responding to a question* asked by a client about the ongoing litigation against Defendant personally. This context is particularly relevant in three respects.

First, because Defendant was responding to a client about an ongoing lawsuit against him, Defendant's statements were made in a context in which the "audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole . . . ." *Info. Control Corp.*, 611 F.2d at 784. In such cases, use of "aggressive language" and the "tactics of a determined adversary" is expected, and courts consider this in determining whether the implication is defamatory as a matter of law. *See, e.g.*, *Bakal v. Weare*, 583 A.2d 1028, 1030 (Me. 1990); *Tomson v. Stephan*, 699 F. Supp. 860, 862 (D. Kan. 1988).

Bolstering this conclusion is the fact that *Plaintiff himself has used similar rhetoric* in his own descriptions of the *Calypso Towers Litigation*. *See, e.g.*, Doc. 15 at 3 (accusing Defendant of filing a "baseless lawsuit" against Plaintiff); *id.* at 5, 7 (accusing Defendant of "incompetence and

malicious conduct" and "ill will and hostility" by filing the lawsuit). Plaintiff also characterizes Defendant's claims in the *Calypso Towers Litigation* as "frivolous." *Id.* at 3. Plaintiff essentially hurls the same accusations of malicious litigiousness at Defendant as Defendant leveled against Plaintiff.

Second, as to the implication that Plaintiff's lawsuits lacked merit, Plaintiff concedes that he did not prevail in his malicious prosecution lawsuit against Defendant. Doc. 17 at 7. Indeed, the Florida court held that Plaintiff could not establish an essential element of his claim. *Id.* As Plaintiff also concedes, he also did not prevail in his lawsuit against Trustmark Bank. Doc. 15 at 7. Where, as here, Plaintiff contends that Defendant defamed Plaintiff by implying that he is "litigious," Plaintiff's history of failed litigation is important. *See, e.g.*, *Soni v. Wespiser*, 239 F. Supp. 3d 373, 388–89 (D. Mass. 2017). Insofar as the term "litigious" suggests filing lawsuits that lack merit, at least one Florida court found that a lawsuit filed by Plaintiff lacked merit.

Third, the context cuts against Plaintiff's argument that Defendant failed to "fairly or accurately state his own status or role" in litigation involving Plaintiff and Defendant. *Id.* The fact that a person inquired

about Plaintiff's lawsuit against Defendant indicates that at least one person already *was aware* of Plaintiff's lawsuit against Defendant. *See Demby v. English*, 667 So. 2d 350, 355 (Fla. Dist. Ct. App. 1995) (explaining that statements can be "pure opinion" even when all the facts on which an opinion is based are not disclosed but an audience "would be expected" to be aware of those facts). Insofar as court documents are public records, and Plaintiff made no effort to hide his lawsuit against Defendant, it is *likely that many people* already knew of the lawsuit long before Defendant mentioned it. Defendant, therefore, was simply telling them something that at least some audience members already knew.

Furthermore, Defendant's statements yet again provided the essential facts upon which Defendant's opinions were based. Namely, that Plaintiff filed lawsuits against four parties who had done business with Plaintiff—including Defendant and his client. When a defendant "presents the facts at the same time he or she offers independent commentary, a finding of pure opinion will usually result." *Zambrano*, 484 So. 2d at 606; *see Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. Dist. Ct. App. 1995).

Therefore, taking Plaintiff's amended complaint as true and drawing all reasonable inferences in his favor, the implication that Plaintiff is litigious is not defamatory because it is pure opinion. As a matter of law, Plaintiff has failed to state a claim of defamation by implication.

## III. CONCLUSION

Because Plaintiff has failed to state a claim upon which relief can be granted, the undersigned respectfully **RECOMMENDS** that the District Court:

1.   **GRANT** Defendant Craig B. Morris's "Motion to Dismiss," Doc. 16;

2.   **DISMISS** Plaintiff Thomas M. Utterback's claims against Defendant Craig B. Morris.

3.   **DIRECT** the clerk of the court to enter judgment and close the case.

At Pensacola, Florida this 26th day of July, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.